AticiNSON, J.,
dissenting:
I regret that I can not concur in the opinion of the court in this case, for the reason that it appears inequitable not to do so; but it seems to me that it so clearly comes within the decisions of this court and the.Supreme Court of the United States, in cases where the same principle is involved, that I feel it to be my duty to dissent.
The act of March 3, 1899 (30 Stat. L., 1228), under which this suit is instituted, reads as follows:
“ The officers and enlisted men comprising the temporary force of the Navy during the war with Spain, who served .creditably beyond the limits of the United States, and -who have been or may hereafter be discharged, shall be paid two months’ extra pay; and all such officers and enlisted men of *262 the Navy who have so served within the limits of the United States, and who have been or may hereafter be discharged/ shall be paid one month’s extra pay.”
This suit, therefore, was brought by reason of the rejection of the claimant’s claim for two months’ sea-service pay by the accounting officers of the Treasury, and allowing him only waiting-orders pay. The rejection was based upon a ruling of the Auditor of the Navy Department made March 8, 1899, construing said act as modified by a decision of the Assistant' Comptroller of the Treasury made March 11, 1899 (5 Comp. Dec., 569).
The assistant Comptroller held that the rate of pay contemplated by the Congress was according to the kind of service the officer or enlisted man was engaged in performing at the time of his discharge. His conclusion was based upon the decision of the Supreme Court of the United States in the cases of the United States v. North and Emory (112 U. S. R., 510).
No question is raised before us as to the right or duty of the Government to pay claimant the two months’ extra pay provided for by the statute above quoted; but the question referred to the court, and upon which a decision is asked, is whether claimant should be paid “ sea-service ” pay, which is at the rate of $1,700 per annum, or “ shore ” or “ waiting-orders ” pay, which is only at the rate of $1,000 per annum allowed to officers of the rank of the claimant in this case, while he is not engaged “ at sea ” or in “ sea service.”
Claimant’s counsel contends that the decision of the Supreme Court in the North and Emory cases, supra, is that the court did not have before it any question as to the rate of pay intended by the. acts giving extra pay to those officers who had served in the Mexican war in the military and naval service of the United States, and that therefore there is a material difference between that case and the case at bar. I have carefully examined the facts in that case, because it seemed to me harsh and apparently unjust to the claimant in the case before us that he should be detached from his ship when he was drawing pay at the rate of $1,700 per annum and ordered to his home to be discharged from the public *263 service. ' Five days thereafter he was honorably discharged, and after his discharge he was paid at the rate of $1,000 per year, which was the pay allowed under the statute while he was “ waiting orders.” . Equity seems to demand that he should have been paid at the rate of $1,700 per annum, because his entire enlistment and service was on “ sea duty; but the statute before us, which is somewhat ambiguous, does not define in plain terms whether an officer discharged under such circumstances shall' be paid on the basis of “ sea pay,” “ shore pay,” or “ waiting-orders pay; ” yet the decision in the North and Emory cases, supra, is in no respect ambiguous, as I read it, and it is, therefore, our duty to be guided by it.
In the cases of Emory and North v. The United States (19 C. Cls. R,., 270) the court said:
****❖❖ *
“ The court has no power to legislate as to what grade of pay naval officers shall now receive. It can not decree that an -officer waiting orders shall recover sea-service pay or that an officer on sea service shall recover waiting-orders pay. But inasmuch as Congress went to the act of 1848 when enacting that naval officers shall receive three months" extra pay, the court may go there for a like purpose and carry out the analogy which the act of 1879 instituted. We therefore hold that the pay which a naval officer was receiving when his service in the war with M.exico ended furnishes the standard by which his three months’ extra pay must be computed. If he was then on sea service, it will be sea-service pay; if he ivas on other duty, it will be other-duty pay; if he was on waiting orders, it will be waiting-orders pay; if he was a lieutenant commanding, it will be a lieutenant’s pay when commanding; if.he was a lieutenant on other duty, it will be simply a lieutenant’s pay. As to the point of time in the period of an army or navy officer’s service which shall be taken as equivalent to the muster out of the. volunteers — the time at which his rank must be ascertained and extra pay must be computed — we are of the opinion that it should be the time when his ‘ actual service during the war ’ ceased. In the case of volunteer officers that time was definitely fixed by the event of their muster out. They served in the war with Mexico not till the signing of the treaty, not till the exchange of ratifications, not till the passage of the act giving them three months’ extra pay, but until they had ‘ served out the term of their engagements,’ as evidenced by their muster out,”
*264 These.cases were appealed, to the Supreme Court of the United States, and the decision of this court was affirmed as stated above. The Supreme Court not only had before it in review the various acts of Congress bearing upon the point in issue, but it also had before it the opinion of the Court of Claims as .well, which is exhaustive and convincing, and which explicitly holds, in language which can not be mistaken or misconstrued, that the time from which the extra pay must be reckoned is not from the date of the signing of the treaty of peace, but it must be when the soldier’s actual service ceased, which time is definitely, fixed by the date that he was mustered out of the Army or the Navy.
It is plainly evident to my mind that Chief Justice Waite, in passing upon these same cases on appeal, sustained the views expressed by the Court of Claims, when the language following was used by him:
“ The pay they were to receive was evidently that which they were receiving at the end of their engagement, or when they were honorably discharged. The language is, £ shall be entitled to receive three months’ extra pay,’ evidently meaning the same pay they would have received if they had remained in the same service three months longer. It follows that, as North was serving at sea when he was ordered away, he was entitled to three months’ sea pay, and as Emory was mustered out óf the service in the war as lieutenant-colonel of volunteers his pay must be in accordance with that rank.”
What are we to infer was the intent of the Supreme Court in the language above quoted when read in connection v/ith the decision of the Court of Claims, which it was then reviewing? Did it intend to hold that the officer’s pay was to be computed from the time of the signing of the treaty of peace ? It does not say so. But it does say that it was “ at the end of their engagement,” which in the case of both Emory and North was at the time “ when they were honorably discharged.”
The claimant in the case at bar, however, is not in every respect on all fours with the cases of Emory and North. The claimant Hite, in the case before us, was not detached from his ship until after the treaty of peace was signed with Spain, and five days subsequent to the receipt of such order *265 be was honorably discharged from the service of the United States Navy. It is clearly evident that the court meant to convey the idea, the same as it was expressed by the Court of Claims, that the engagement of the officers could not be completed until they were regularly mustered out1 of the service.
If this were a matter of first impression, the exceptional circumstances which the court thinks should bring this case within the spirit of the statute might prevail. But neither this court nor the Supreme Court’has construed the statute to mean anything more than its language implies.
The Supreme Court in the Emory and North cases, supra, in construing the act of 1848, held that the rate of pay an officer should receive must be the pay pertaining to the character of duty he was performing at the time of his discharge! Applying this construction to the act of March 3,1899, which is in fact a practical reproduction of the act of 1848, we should hold in the case at bar, although, in a sense, it bears the mark pf harshness, that the petition of the claimant should be dismissed.
I am authorized to state that Howry, J., concurs in this dissent.